UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| JAMIE LYNN ENGLAND, )<br>)<br>Plaintiff, )<br>)<br>V. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Civ. No: 13-137-GFVT<br><br>**MEMORANDUM<br>OPINION<br>&<br>ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Plaintiff, Jamie England, brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Commissioner of Social Security (Commissioner) denying her application for supplemental security income (SSI). The Court, having reviewed the record and for the reasons set forth herein, will deny England's Motion for Summary Judgment [R. 28] and grant the Commissioner's. [R. 29.]

**I**

England filed an application for SSI on October 20, 2010. [Transcript (Tr.) 160-65.] She alleges a disability beginning on September 17, 2010, due to right arm tendonitis, carpal tunnel syndrome, dyspnea on exertion, degenerative disc disease/osteoarthritis, coronary artery disease, migraines, depression, and anxiety. [Tr. 14-15.] England's applications were denied initially in April 2011, and upon reconsideration in June 2011. [Tr. 12.] Subsequently, at England's request, an administrative hearing was conducted before Administrative Law Judge (ALJ) Andrew J. Chwalibog on June 18, 2012. [Tr. 28-46.] During the hearing, the ALJ heard testimony from England and from vocational expert (VE) Dwight Mcmillion. [*Id*.] Following

the hearing, ALJ Chwalibog issued a decision denying England's application for SSI on July 12, 2012. [Tr. 12-23.] England, who was thirty-eight years old as of the alleged onset date, has a high school education and some college. [Tr. 14, 160.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. § 416.920.[1] First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 416.920(a)(4)(iii). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which is an assessment of one's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. §§ 404.1520(e), 404.1545. Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). Fifth, if a claimant's impairments (considering her

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 416.920(a)(4)(v).

In this case, at Step 1, the ALJ found that England has not engaged in substantial gainful activity since her alleged onset date of October 20, 2010. [Tr. 14.] At Step 2, the ALJ found that England suffers from the following severe impairments: degenerative disc disease/osteoarthritis, coronary artery disease, migraines, depression, and anxiety. [Tr. 14.] At Step 3, the ALJ found that England's impairments, whether considered alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 15-17.] Before moving to Step 4, the ALJ considered the entire record and determined that England possessed the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) with the following physical and mental limitations:

> [S]he can never climb a ladder or scaffold; can only occasionally climb ramp or stairs, balance, stoop, kneel, crouch, and crawl; only occasionally pushing and pulling with the left lower extremity; only occasional gross manipulation bilaterally; should avoid concentrated exposure to vibration and hazards; can understand, recall and carry out simple, familiar instructions and procedures requiring brief initial learning periods; can concentrate and persist at simple, familiar tasks requiring some independent judgment and involving minimal variations; can relate adequately to others and adapt adequately to situational conditions and changes with reasonable support and structure.

[Tr. 17.] After explaining in detail how he determined England's RFC [Tr. 17-22], the ALJ determined that England has no past relevant work. [Tr. 22.] At Step 5, the burden shifted to the Commissioner to identify a significant number of jobs in the national economy that England could perform, given her RFC, age, education, and experience. *Jones*, 336 F.3d at 474; 20 C.F.R. §§ 404.1520(g), 404.1560(c). Here, the ALJ concluded that, based on England's RFC and the VE's testimony, there are jobs that exist in significant numbers within the national economy that England could perform. [Tr. 23.] Accordingly, on July 12, 2012, the ALJ issued

an unfavorable decision, finding that England was not disabled, and therefore ineligible for SSI. [Tr. 23.] The Appeals Council declined to review the ALJ's decision on September 19, 2013 [Tr. at 1-3], and England now seeks judicial review in this Court.

## II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also

4

supports the opposite conclusion. *Ulman*, 693 F.3d at 714 (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

A

England primarily contends that the ALJ's decision is not supported by substantial evidence. [R. 28-1 at 11-13.] Although England's counsel asserts that the ALJ's decision "does not reflect the substantial evidence in the record, nor is it a proper interpretation of the controlling regulations and reviewing case law," [Tr. 11] her counsel fails to identify any specific error on the part of the ALJ or any applicable regulations that the ALJ failed to follow. England's counsel offers only sweeping complaints devoid of citation to any legal authority about how the ALJ's personal "principles" are not aligned with the Social Security Administration's guiding principle of serving with "empathy, creativity, integrity," and determination to perform tasks with "adherence to the law, clarity, commitment to best demonstrated practices, cultural sensitivity, and honesty." [R. 28-1 at 12-13.] England's entire argument is then summarized as follows:

> If the noted SSA's service principles has [sic] been followed here, the medical evidence supplied by Ms. England's treating physicians, psychiatrists as well as confirmed by the Commissioner's own examining physician along with the probative Vocational Expert's testimony which considered all these factors. . . should have resulted in a finding that Ms. England has been disabled . . . since September 10, 2010.

[R. 28-1 at 13.] Apart from this broad allegation, England merely summarizes medical records and findings that support her position and voices her disagreement with the ALJ's ultimate conclusion.

Summarizing the medical evidence that supports England's position does little to explain to the Court why the ALJ's position is not supported by substantial evidence. As noted above, the Court must affirm the ALJ's decision if it is supported by substantial evidence even if

5

substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass*, 499 F.3d at 509; *Her*, 203 F.3d at 389-90. Thus, more than mere disagreement with the ALJ's conclusion is required to successfully assign error to an ALJ's findings. *See, e.g., Richards v. Astrue*, at *8 (N.D. Ohio, June 8, 2012) (quoting *Carter v. Comm'r of Soc. Sec.*, 2012 WL 1028105, at *7 (W.D. Mich. Mar. 26, 2012)). Nevertheless, the Court has reviewed the record and will address the overall claim concerning the lack of substantial evidence and the weight given to various opinions.

In assessing England's RFC, the ALJ properly considered the relevant evidence, such as the medical opinions and records of the physicians who treated and evaluated England, and he properly explained his reasons for the weight he gave to each opinion. Although treating physicians' opinions generally are entitled to more weight than others, the ALJ may discount them if there is a lack of objective medical evidence to support them or if the opinion is inconsistent with the record as a whole. 20 C.F.R. § 416.927(c); *Walters v. Comm'r Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). Under 20 C.F.R. § 404.1527(c)(2), a treating source's opinion on the nature and severity of a claimant's impairments is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).

Here, ALJ Chwalibog properly considered the medical opinions and diagnoses England refers to in her motion, including the opinions of several treating physicians such as Dr. Ahmed, Dr. Willis, and Dr. Azad. [Tr. 18-21.] The ALJ also evaluated their opinions in light of the medical records and objective evidence of England's condition. In formulating England's RFC,

the ALJ gave "little weight" to Dr. Azad's opinion because the record revealed no objective evidence to support it, Dr. Azad did not relate his opinion concerning the degree of limitation to any specific findings, and his opinion is not supported by any reports. [Tr. 21.] Additionally, concerning England's mental health, the ALJ noted that Dr. Azad's specialty is internal medicine, and therefore he is not qualified to make determinations about her mental health functioning. [Tr. 21-22.] These are all appropriate reasons to give less weight to the opinion of a treating physician, and England does not point to any evidence in the record contradicting this conclusion.

      The ALJ also considered the opinions of consultative examiners Dr. Rhoads and Dr. Ford. [Tr. 19-22, 285-94, 398-400.] According to Dr. Rhoads, England ambulated with a normal gait, was stable at station and comfortable in the supine and sitting positions, had good memory for recent and remote medical facts, had normal cardiovascular functioning, nontender upper and lower extremities, displayed no tenderness in her hands, and had no evidence of paravertebral muscle spasm or joint tenderness in her hips. [Tr. 19, 289-91.] She also noted that England had full strength in her arms and legs, and was able to perform tandem gait and squat without difficulty. [Tr. 19, 291-92.] These observations somewhat contradicted England's subjective complaints, as well as the severe functional limitations included in Dr. Azad's opinion, but were consistent with the ALJ's determination that England could perform a restricted range of light work. Dr. Ford's mental examination noted that England had normal memory, average to low average intelligence, some difficulty with attention and concentration, problems with anxiety, gaps in insight, and some limitations in coping skills, but that she had good memory, maintained eye contact, and was cooperative. [Tr. 20, 22, 398-400.] The overall RFC determination of light work with certain limitations is consistent with all these findings.

The ALJ also accounted for Dr. Ford's determination that England could understand, remember, and carry out simple instructions, but that she had slight impairment in her ability to tolerate the stress and pressure of day-to-day employment and respond appropriately to supervision and co-workers as well as some impairment of her attention and concentration abilities. [Tr. 22, 400.] These limitations are supported by the record as a whole, and are reflected in the RFC determination.

The ALJ also explained his reasons for giving "great weight" to the state agency medical consultants, such as Dr. Swan and Dr. Athy. [Tr. 22, 87-92.] Consultative examiners for the state agency and other program physicians are regarded "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96-6p, 1996 WL 374180, *2. Thus, the opinions of one-time examining professionals, state agency doctors, and non-examining consultative professionals should be considered, and may be given some or even significant weight depending on the analysis of the same factors as those considered for treating physicians, such as supportability, consistency and specialization. 20 C.F.R. § 404.1527(e), (f); *see also* SSR 96-6p at *2-*3; *Branch v. Astrue*, 2010 WL 5116948, at *5 (N.D. Ohio Dec. 9, 2010). Indeed, the regulations instruct the ALJ to consider the opinions of state agency consultants and to explain the reasons for the weight given to them. 20 C.F.R. § 404.1527(e)(2)(i)-(ii), (f)(2); SSR 96-8p, 1996 WL 374184, *7. Here, ALJ Chwalibog explained that the opinions of the state agency consultants were "balanced, objective, and consistent with the evidence of record as a whole," and their reports "clearly reflect a thorough review of the record and are supportable" by the evidence in the record. [Tr. 22.] The ALJ noted that these experts are also familiar with the SSA disability evaluation program, and that in England's case their opinions were supported by the report of the

8

consultative examiner Dr. Ford. [Tr. 22.] In sum, ALJ Chwalibog gave the "greatest weight" to the opinions that were "most consistent with the longitudinal review of the evidence of record." [Tr. 22.] Apart from a specific showing by England as to why any of the opinions in the record should be given lesser or greater weight, the Court cannot conclude that the ALJ erred in this determination. *See also Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 438-40 (6th Cir. 2012) (upholding weight given by ALJ to non-examining source when he explained and justified his decision and explained that he found the state-agency physicians' assessment consistent with the longitudinal treatment record).

In particular, the ALJ made all of the above determinations when assessing England's RFC, which is a responsibility wholly reserved for the ALJ. 20 C.F.R. §§ 404.1512(b), 404.1527(d)(2), 404.1545(a)(3); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician."). It is the *ALJ's* duty to review the relevant records and evidence in formulating the RFC, and the ALJ must not base the RFC on any one particular opinion. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 404.1545(a)(3), 404.1546(c); S.S.R. 96-8p, 1996 WL 374188, at *1, *5. Here, ALJ Chwalibog reviewed and relied on multiple opinions and evidence in the record, and he gave valid reasons for the weight he afforded the various opinions, particularly relying on those that were supported by objective evidence. As noted above, objective medical tests and reports supporting the ALJ's decision can satisfy the substantial evidence standard. *See, e.g., Lawrence v. Comm'r of Soc. Sec'y*, 591 Fed. App'x 470, 471 (6th Cir. 2015) (noting objective medical evidence along with medical opinions and claimant's daily activities all constituted substantial evidence supporting the RFC determination). In contrast, England provides no reason

as to why the RFC determination in this case is not supported by substantial evidence.[2] *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e decline to formulate arguments on [claimant's] behalf, or to undertake an open-ended review of the entirety of the administrative record" to find if there is any evidence inconsistent with the ALJ's decision). Therefore, the Court finds that ALJ Chwalibog's decision was supported by substantial evidence.

### B

The only contention approaching a specific argument that the ALJ erred in some manner is England's allegation that ALJ Chwalibog was biased. [R. 28-1 at 1.] Counsel for England asserts that the ALJ's decision was improperly influenced by his bias toward England in that he believes "all SSI claimants who have not worked are not entitled to credibility" because they lack the desire to work. [*Id*.] The specific statement in ALJ Chwalibog's decision that apparently so inflames England's counsel is his conclusion that England "appears to be quite significantly exaggerating her symptoms," noting that England's "almost nonexistent work record" detracted from her credibility and indicated "a very strong lack of desire to be gainfully employed." [Tr. 21.] England, however, does not present any actual evidence of ALJ Chwalibog's alleged bias toward "all SSI claimants who have not worked," nor does she

---

[2] England's counsel also makes a vague reference to the VE's testimony and includes a general citation to that portion of the hearing transcript. [*See* R. 28-1 at 13.] To the extent England challenges ALJ Chwalibog's reliance on the VE's testimony, such a challenge is also without merit. At the hearing, England's counsel posed a question to the VE about the availability of jobs using a hypothetical situation involving different limitations than those encompassed by the RFC assigned to England. ALJ Chwalibog noted the VE's negative response to the hypothetical question, and explained his reason for disregarding it -- specifically, "because the weight of the evidence does not support" the limitation described by England's counsel. [Tr. 23.] ALJ Chwalibog properly considered the VE's testimony at Step 5 of the evaluation process in light of England's non-exertional limitation, and explained the extent to which he relied on that testimony. England does not present any specific challenge to the RFC determination, and therefore any implied assertion that ALJ Chwalibog should have given more weight to the hypothetical posed by England's counsel, instead of the hypothetical that was consistent with England's RFC limitations, is without merit.

challenge any other part of his credibility determination – a determination that depends on several factors and was not solely determined by England's lack of work history.

When a hearing officer or adjudicator for an administrative agency is accused of bias, we must begin with the presumption that such officers are unbiased and operate with integrity. *Schweiker v. McClure*, 456 U.S. 188, 195 (1982); *see also Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 856 (6th Cir. 2011) ("We presume that . . . ALJs carry out their duties fairly and impartially."). The party making the accusation of bias has the burden of overcoming that presumption "by a showing of conflict of interest or some other specific reason for disqualification." *McClure*, 456 U.S. at 195-96; *see also Bailey*, 413 F. App'x at 856 (claimant bears burden of persuading the court that ALJ acted with bias and can only do so with "convincing evidence that a risk of actual bias or prejudgment is present") (quoting *Navistar Intern. Transp. Corp. v. United States E.P.A.*, 941 F.2d 1339, 1360 (6th Cir. 1991)). "[A]ny alleged prejudice on the part of the [ALJ] must be evident from the record and cannot be based on speculation or inference." *Navistar*, 941 F.2d at 1360. To be disqualifying, the alleged bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966).

When evaluating credibility, an ALJ must consider all the evidence presented, including information about the claimant's prior work history. 20 C.F.R. § 416.929(c)(3); SSR 96-7p, 61 Fed. Reg. 34,483-01 (1996). Here, the ALJ's conclusion about England's lack of work history factored into his credibility analysis, but his ultimate determination that she was less than credible was also based on the fact that the medical evidence in the record contradicted her subjective complaints about her symptoms. [Tr. 20-21.] England does not point to any evidence

that the ALJ's bias actually existed and is not based on speculation, nor does she demonstrate that such alleged bias improperly resulted in an opinion on the merits because of something the ALJ learned apart from the evidence in the record. Moreover, in the context of disability claims, a lack of work history may be considered as some indication of a claimant's motivation when assessing her credibility. *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (affirming ALJ's decision that claimant's "extremely poor work history" and disinclination to work "negatively affected her credibility regarding her inability to work"); *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack of work history may indicate a lack of motivation to work rather than a lack of ability" and may be considered in the context of evaluating claimant's subjective complaints); *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (finding ALJs may consider a claimant's poor work history when evaluating credibility and noting a poor work history may indicate an unwillingness to work depending on the circumstances); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (finding ALJ properly considered claimant's poor work history when evaluating the credibility of her subjective complaints regarding her symptoms); *Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995) (rejecting claim that ALJ was biased against SSI claimants with poor work history when ALJ made comments about claimant's poor work history in the context of assessing the credibility of her subjective complaints about pain and also considered other factors as well).

Moreover, determinations concerning the claimant's credibility are within the province of the ALJ, rather than the reviewing court. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 247 (6th Cir. 2007); *see also Walters*, 127 F.3d at 531. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citations

omitted). "[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones*, 336 F.3d 469, 475-76 (6th Cir. 2003) (citing *Walters*, 127 F.3d at 531). Under the regulations, a claimant's "subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability." *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 852 (6th Cir. 1986) (citing 20 C.F.R. § 404.1529); *see also* 42 U.S.C. § 423(d)(5)(A) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. . ."). There must also be objective medical evidence of an underlying condition supporting allegations of pain. *Duncan*, 801 F.2d at 852.

Here, ALJ Chwalibog applied the appropriate test concerning England's symptoms and extensively considered the objective medical evidence in the record, the opinion evidence of the various treating physicians, consultative examiners, and state agency experts, as well as England's own testimony and that of her family members. [Tr. 17-22.] Her poor work history was only one of many factors the ALJ considered in assessing England's credibility and was not the sole basis for his overall disability determination. Apart from some further evidence of specific wrongdoing on the part of the ALJ, an adverse ruling in a social security case "is not sufficient of itself to support a finding of bias." *Hartman v. Colvin*, 954 F. Supp. 2d 618, 640 (W.D. Ky. 2013) (citing *Perschka v. Comm'r*, 411 F. App'x 781, 788 (6th Cir. 2010)).

**III**

As explained above, this Court is limited to a determination of whether the Commissioner's decision "is supported by substantial evidence and was made pursuant to proper legal standards." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citing *Rogers,* 486 F.3d at 241). To the extent that England intends to make any arguments not already

addressed herein, her generalized assertions are too poorly developed to warrant further analysis. *See Hollon*, 447 F.3d at 491 (noting that reviewing courts limit their consideration "to the particular points that [the claimant] appears to raise in her brief on appeal"); *see also Indeck Energy Servs. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000) (noting that issues presented in a perfunctory manner with no effort at developed argumentation are deemed waived). England has not pointed to evidence in the record supporting her claim that the ALJ made an improper disability determination. The fact that England disagrees with the ALJ's ultimate conclusion is not by itself sufficient to meet her burden. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. England's Motion for Summary Judgment [**R. 28**] is **DENIED**;

2. The Commissioner's Motion for Summary Judgment [**R. 29**] is **GRANTED**; and

3. Judgment in favor of Defendant will be entered contemporaneously herewith.

This 31st day of March, 2016.

Gregory F. Van Tatenhove
United States District Judge